**GAAL v. MURPHY et al.***

No. 14279.

Court of Appeal of Louisiana. Orleans.

Jan. 3, 1933.

Gill & Simon and Warren M. Simon, all of New Orleans, for appellants.

Richard A. Dowling, of New Orleans, for appellee.

JANVIER, J.

Defendants are the owners of two race horses which, during the 1932 racing season, were trained and supervised by plaintiff, who now alleges that there is due him for his said services and for his share of the winnings of the horses, and for various feed supplies and other necessary expenditures made in connection with the said venture, the sum of $1,644.85.

In accordance with the prayer of the petition a writ of attachment was issued under which the two said horses were taken into the custody of the civil sheriff.

Defendants admit that they are the owners of the horses and that plaintiff was in charge of them, but they contend that all sums due plaintiff have been paid him in full. In the court below judgment was rendered for plaintiff in the sum of $727.72, and defendants have appealed.

The record shows that the two horses were turned over to plaintiff, and, to use the racing expression which we find in the record, he "campaigned" them during the 1932 season. The various expenses for which he claims reimbursement include feed for the horses, bills for jockey services, drug bills, moving van bills, horseshoeing bills, and various other similar items. Though there are involved only questions of fact, we find it necessary to reverse the judgment appealed from because we are thoroughly convinced that the finding below was erroneous. It would serve no good purpose to recount in detail the enormous number of items, in support of which plaintiff's proof has been woefully lacking. Reading the record as a whole, we have come to the conclusion that the amounts which plaintiff claims to have spent, if, in fact, they came out of his own funds in the first instance, were all returned to him by defendants. In practically no case has plaintiff produced any receipt as proof of any particular item, and, though he seeks to explain this by saying that, among the racing fraternity, all business transactions are conducted on a basis of honor as among gentlemen, and that no receipts are given, we find that this explanation does not coincide with many other statements to the effect that he obtained receipts, but that he left them at home. There are three instances which, in our opinion, stand out glaringly as evidences of the untrustworthiness of plaintiff's testimony. We find that he claims to have paid a feed bill amounting to $112 some three days after this suit was filed, and yet he obtained no receipt from the feed dealer to whom he paid this amount. Though it may be possible that, as a result of the custom which he claims exists among racing people to take no receipts, he would have followed that custom prior to the time at which he knew he was going to have difficulty in obtaining his money, nevertheless, if he paid this item after the suit was filed, and, therefore, after he knew that defendants were resisting his claim, it would require greater credulity than we possess to believe that he would have failed to obtain a receipt to use as evidence. We also find that his claim that his indorsement on a check for $300 was placed there merely for the convenience of one of the defendants, and that he received none of this money, is beyond the bounds of credibility. Furthermore, his claim that he advanced to one of the defendants large sums in cash cannot be believed because, just at that same time, his personal drug bill, amounting to only about $14, had been unpaid for so long a time that a judgment for that amount was obtained against him, and under that judgment his interest in this suit was seized. We cannot believe that an individual who is unable to pay so small a bill for necessities could at that same time afford to advance to others cash sums for substantial amounts. Looking at the record as a whole, we find it impossible to believe plaintiff's many inconsistent and inaccurate statements, practically all of which are totally unsupported by corroborative evidence. On the other hand, we have no difficulty in following the testimony submitted on behalf of defendants, which tends to show payments of

*Rehearing denied January 30, 1933.

large amounts made to plaintiff or to others for the identical items which plaintiff himself claims to have paid.

The judgment appealed from is annulled, avoided and reversed, and plaintiff's suit is dismissed at his cost.

Reversed.

HIGGINS, J., takes no part.